Anna Y. Park, CA SBN 164242
Nakkisa Akhavan, CA SBN 286260
Connie K. Liem, TX SBN 791113
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, California, 90012
Telephone: (213) 785-3080
Facsimile: (213) 894-1301
Email: anna.park@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | • **Sexual Harassment** |
| | • **Constructive Discharge** |
| AMTCR, INC., AMTCR NEVADA, INC., and AMTCR CALIFORNIA, LLC, collectively dba McDonald's, and DOES 1-10, inclusive, | (42 U.S.C. §§ 2000e et. seq.) |
| Defendants. | **JURY TRIAL DEMAND** |

## <u>NATURE OF THE ACTION</u>

This is an action brought by Plaintiff United States Equal Employment

Opportunity Commission ("EEOC" or the "Commission") under Title VII of the

Civil Rights Act of 1964, as amended (hereinafter "Title VII"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to the charging party, herein identified as "Charging Party," and a class of aggrieved individuals (the "Claimants"). The Commission alleges that AMTCR, Inc., AMTCR Nevada, Inc., and AMTCR California, LLC, collectively dba McDonald's (collectively "Defendants") engaged in a pattern of tolerating and allowing Charging Party and class of aggrieved individuals, both male and female, to be subjected to severe or pervasive sexual harassment and/or hostile work environment on the basis of sex in violation of Section 703 (a) of Title VII. The Commission further alleges that due to the ongoing sexually hostile and abusive working conditions and Defendants' failure to remedy the harassment, Charging Party was subjected to constructive discharge in violation of Section 703 (a) of Title VII.

As alleged with greater particularity below, the Commission alleges that Defendants subjected the Charging Party and a class of aggrieved individuals to sexual harassment supervisors, managers, and co-workers at Defendants' stores/restaurants in Nevada, Arizona, and California. The sexual harassment included, but was not limited to, constant groping, grabbing, and rubbing of the arms, shoulders, thighs, and buttocks; offensive comments and gestures regarding male genitalia; sexual advances; and sexual ridicule, intimidation, and insults. Due to Defendants' failure to remedy the ongoing sexual harassment, the Charging Party and many other adversely affected employees could no longer tolerate the hostile and abusive work environment and were subjected to constructive discharge.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.

2.     This action is authorized and instituted pursuant to Section 706(f)(1)

and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Nevada.

## PARTIES

4.     The Commission is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by §§ 706(f)(1) and (3), Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

### AMTCR, Inc.

5.     At all relevant times, Defendant AMTCR, Inc. has continuously been a corporation doing business in the State of Nevada and Clark County, Nevada, and the jurisdiction of the United States District Court for Nevada.

6.     At all relevant times, Defendant AMTCR, Inc. has continuously employed fifteen (15) or more persons.

7.     At all relevant times, Defendant AMTCR, Inc. has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(1) (b), (g), and (h).

### AMTCR, Nevada Inc.

8.     At all relevant times, Defendant AMTCR, Nevada, Inc. has continuously been a corporation doing business in the State of Nevada and Clark County, Nevada, and the jurisdiction of the United States District Court for Nevada.

9.     At all relevant times, Defendant AMTCR, Nevada, Inc. has continuously employed fifteen (15) or more persons.

10.     At all relevant times, Defendant AMTCR, Nevada, Inc. has

continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(1) (b), (g), and (h).

<u>AMTCR California, LLC</u>

11.    At all relevant times, Defendant AMTCR California, LLC, has continuously been a limited liability company doing business in the State of Nevada and Clark County, Nevada, and the jurisdiction of the United States District Court for Nevada.

12.    At all relevant times, Defendant AMTCR California, LLC has continuously employed fifteen (15) or more persons.

13.    At all relevant times, Defendant AMTCR California, LLC has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(1) (b), (g), and (h).

14.    Since at least 2017, Defendants AMTCR, Inc., AMTCR Nevada, Inc., and AMTCR California, LLC have been collectively operating as a single employer and/or integrated enterprise in Nevada, Arizona, and California (the "tri-state region"). Defendants AMTCR, Inc., AMTCR Nevada, Inc., and AMTCR California, LLC have common management and ownership, centralized control of labor operations, and interrelation operations as these three entities:

    a.  Collectively own, manage, and operate approximately twenty-two (22) McDonald's fast food restaurants in the tri-state region;

    b.  Are collectively doing business as "McDonald's;"

    c.  Operate under the common ownership and management of President/Owner Abelardo "Abe" Martinez III;

    d.  Share common managers, such as Director of Operations Theresa Hernandez and Area Supervisor Ruben Benitez, who both oversee employees throughout the tri-state region;

e.  Share a common corporate headquarters and/or main office and human resources department for the entire tri-state region located at 2611 E. Kingman Ave., Kingman, Arizona 86401;

f.  Have centralized control of labor operations and human resources functions such as hiring and firing, and managing payroll and benefits for all employees within the entire tri-state region at 2611 E. Kingman Ave., Kingman, Arizona 86401;

g.  Largely share the same employee handbook and EEO complaint process where all employees within the tri-state region may contact the main office at 2611 E. Kingman Ave., Kingman, Arizona 86401 if s/he wishes to report sexual harassment;

h.  Share maintenance employees/repairmen and restaurant equipment among all the twenty-two (22) McDonald's stores throughout the tri-state region;

i.  Share the same accounting, procurement, and expenditure process for purchasing food, goods, and services out of the corporate/main office at 2611 E. Kingman Ave., Kingman, Arizona 86401; and

j.  Share the same legal counsel.

15.  All acts and failures to act alleged herein were duly performed by and attributable to all Defendant(s), each acting as a successor, agent, alter ego, employee, direct and indirect employer, single employer, joint employer, integrated enterprise and/or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting

1  individually, jointly, and/or severally.

2        16.    The EEOC is ignorant of the true names and capacities of each

3  defendant sued as DOES 1 through 10, inclusively, and therefore the EEOC sues

4  said defendants by fictitious names. The EEOC reserves the right to amend the

5  complaint to name each DOE defendant individually or corporately as it becomes

6  known. The EEOC alleges that each DOE defendant was in some manner

7  responsible for the acts and omissions alleged herein and the EEOC will amend the

8  complaint to allege such responsibility when the same shall have been ascertained

9  by the EEOC.

10                 **ADMINISTRATIVE PROCEDURES**

11        17.    More than thirty (30) days prior to the institution of this lawsuit,

12  Charging Party filed a charge of discrimination with the Commission alleging

13  violations of Title VII by Defendant AMTCR, Nevada, Inc.

14        18.    Defendants participated in the Commission's investigation, including

15  by communicating with Commission enforcement staff and responding to requests

16  from the Commission for a position statement, information, and documents.

17        19.    Prior to filing suit, the Commission issued Defendants Letters of

18  Determination on Charging Party's charge of discrimination, finding reasonable

19  cause to believe that Title VII was violated and inviting Defendants to join with the

20  Commission in informal methods of conciliation to endeavor to eliminate the

21  discriminatory practices and provide appropriate relief.

22        20.    The Commission engaged in communications with Defendants and

23  provided Defendants the opportunity to remedy the discriminatory practices as

24  described in the Letter of Determination.

25        21.    The Commission was unable to secure from Defendants a conciliation

26  agreement acceptable to the Commission.

27        22.    On August 25, 2021, the Commission issued to Defendants a Notice

28  of Conciliation Failure for the charge, advising Defendants that the Commission

was unable to secure from them a conciliation agreement acceptable to the Commission.

23.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

24.     Since at least 2017, Defendants have engaged in unlawful employment practices in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1) by subjecting the Charging Party to sexual harassment and constructive discharge, and by subjecting a class of similarly aggrieved individuals to sexual harassment, some of which culminated in tangible employment actions. The unlawful employment practices include but are not limited to those practices identified herein.

*Charging Party was Subjected to Sexual Harassment and Constructive Discharge*

25.     Charging Party, a seventeen-year-old male, was employed as a Crew Member at Defendants' McDonald's store in Boulder City, Nevada from January 2017 to May 2017.

26.     During the course of his employment, Charging Party was subjected to a sexually hostile work environment on almost a daily basis by fifty-four year-old Cook and Crew Trainer, which included: a) unwanted patting, caressing, and rubbing of Charging Party's back, shoulders, thighs, and buttocks, b) sexual advances, c) sexually suggestive lewd facial expressions; and d) and sexually offensive comments such as you don't know what you like until you try it.

27.     Charging Party found this conduct unwelcome. He repeatedly asked the Cook and Crew Trainer to stop touching him on multiple occasions. However, the unwanted touching and sexual harassment continued.

28.     Charging Party opposed the sexual harassment by the Cook and Crew

Trainer by complaining to his supervisors in February 2017 and March 2017. Charging Party's mother also visited the McDonald's store sometime in March 2017 to complain on behalf of her son. Charging Party's mother told a manager that the Cook and Crew Trainer "needs to stop putting his hands on my child." However, Defendants never responded to any of these multiple complaints, and the sexual harassment by the Cook and Crew Trainer continued.

29.     During early April 2017, the sexual harassment escalated. In addition to rubbing and caressing Charging Party's shoulder, back, and buttocks, the Cook and Crew Trainer began to run his hands up and down Charging Party's thighs towards his crotch area, but short of touching his genitalia. The Cook and Crew Trainer would also make sexually suggestive and lewd facial expressions while staring at Charging Party's crotch area.

30.     Sometime during mid-April 2017, Charging Party again complained to management about being sexually harassed by the Cook and Crew Trainer, but the manager told Charging Party that she did not believe his allegations. Defendants took no action in response to this complaint.

31.     Sometime during late April 2017, the Cook and Crew Trainer cupped his hand over his own genitalia in Charging Party's presence and motioned Charging Party to walk towards him. Charging Party was highly offended and immediately walked away. After Charging Party complained to another manager about the Cook and Crew Trainer cupping his genitalia, the manager simply told Charging Party to take the Cook and Crew Trainer's conduct as a "compliment" that someone of the same sex found him attractive. The manager took no remedial action in response to Charging Party's complaint.

32.     The last incident occurred on or about May 10, 2017. As Charging Party was bending down to pick something up from the floor, the Cook and Crew Trainer suddenly moved in front of him and placed his crotch right in front of Charging Party's face. Charging Party was furious and felt publicly humiliated

because other co-workers saw the incident.

33.     Charging Party immediately complained to the manager but was again told to "take it as a compliment that a person of the same sex is attracted to you." The manager did not believe Charging Party's allegation that the Cook and Crew Trainer had put his crotch in front of Charging Party's face and took no action with Charging Party's complaint. The manager's belittling comments about being sexually harassed by the Cook and Crew Trainer and apathy compounded Charging Party's emotional distress, mental suffering, and humiliation.

34.     Later that evening on May 10, 2017, Charging Party and his mother drove back to the McDonald's store to complain about the sexually harassment incident that occurred earlier that day. When they arrived, Charging Party stayed in the car because he was distraught, angry, and highly emotional.

35.     After Charging Party's mother entered the store, she complained to a manager that her son had been sexually harassed again that day. At first the manager seemed surprised that Charging Party had been sexually harassed and responded with something to the effect "oh, he told you about that?" The manager told Charging Party's mother that she and the other managers have never received sexual harassment training and did not know how to respond to such complaints.

36.     Charging Party's mother informed the manager that Charging Party would not be returning to work at McDonald's because of the ongoing sexual harassment and Defendant's continuing failure to stop the harassment.

37.     Shortly thereafter, Charging Party filed a complaint against the Cook and Crew Trainer with the Las Vegas Police Department for engaging in physical and verbal sexually harassing conduct.

38.     The harassment Charging Party was subjected to was unwelcome and made her uncomfortable.

39.     The harassment Charging Party was subjected to was severe and/or pervasive.

40.     Due to the ongoing sexually abusive work environment and intolerable working conditions, Charging Party was forced to quit and constructively discharged in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

*Other Aggrieved Individuals*

<u>Claimant 1</u>

41.     Claimant 1, an eighteen-year old male Crew Member, was employed at Defendants' McDonald's store in Boulder City, Nevada, from July 2016 to December 2017.

42.     During his employment, Claimant 1 was subjected to sexual harassment and unwanted touching on practically a daily basis by the same Cook and Crew Trainer who was sexually harassing Charging Party. The Cook and Crew Trainer would a) grab or rub Claimant 1's rear end, chest, and crotch area, b) touch Claimant 1's biceps while calling him "strong man," c) get really close to Claimant 1's body, and d) make embarrassing comments about Claimant 1's weight and muscles.

43.     Claimant 1 complained to his managers on at least four to five different occasions about the Cook and Crew Trainer's sexually harassing behavior. However, Defendants did nothing and failed to stop the harassment.

44.     The harassment Claimant 1 was subjected to was unwelcome and made her uncomfortable.

45.     The harassment Claimant 1 was subjected to was severe and/or pervasive.

46.     Due to the ongoing sexually abusive hostile work environment and intolerable working conditions, Claimant 1 was forced to quit and constructively discharged.

<u>Claimant 2</u>

47.     Claimant 2, a sixteen-year old male Crew Member, was employed at

Defendants' McDonald's store in Boulder City, Nevada, from April 2017 to May 2018.

48.    During his employment, Claimant 2 was subjected to physical and verbal sexual harassment on practically a daily basis by the same Cook and Crew Trainer who was sexually harassing Charging Party and Claimant 1. The Cook and Crew Trainer would a) subject Claimant 2 to sexual advances, b) rub and touch Claimant 2's shoulders, arms, and rear end, and c) refer to Claimant 2 as "baby" or some other nicknames of a sexual nature.

49.    Sometime in March 2018 as Claimant 2 was undressing and putting on his McDonald's uniform at his parked car before starting his shift. As Claimant 2 was behind his car door undressing, the Cook and Crew Trainer approached him after he had taken out some trash. When the Cook and Crew Trainer was approximately ten feet away, he asked Claimant 2 in a sexually suggestive manner to "close the door" and take his clothes off for him. the Cook and Crew Trainer asked Claimant 2 a second time to take his clothes off and called him "baby." Claimant 2 was horrified and said "no." the Cook and Crew Trainer was also leering at Claimant 2's bare legs under the car door.

50.    Immediately after this incident, Claimant 2 complained to two managers about the Cook and Crew Trainer's sexual harassment. However, Defendants did nothing and the sexual harassment continued.

51.    The harassment Claimant 2 was subjected to was unwelcome and made her uncomfortable.

52.    The harassment Claimant 2 was subjected to was severe and/or pervasive.

53.    Claimant 2 was forced to quit in May 2018 because he could no longer tolerate the ongoing sexually abusive hostile work environment and the toxic work environment and grueling work hours were affecting the quality of his schoolwork.

<u>Claimant 3</u>

54.     Claimant 3, a nineteen-year old male Crew Member, was employed at Defendant's McDonald's store in Boulder City, Nevada from early 2016 to late 2018.

55.     During his employment, Claimant 3 was subjected to physical sexual harassment on practically a daily basis by the same Cook and Crew Trainer who was sexually harassing Charging Party, Claimant 1 and Claimant 2. The Cook and Crew Trainer would a) firmly grab and grope Claimant 3's rear end, hips, and thighs, and b) rub or caress Claimant 3's shoulders. Claimant 3 found this conduct unwelcome.

56.     Claimant 3 complained to two managers after a particular incident in which the Cook and Crew Trainer startled him after he suddenly and forcefully grabbed Claimant 3's hips. However, Defendants did nothing and the physical harassment continued.

57.     The harassment Claimant 3 was subjected to was unwelcome and made her uncomfortable.

58.     The harassment Claimant 3 was subjected to was severe and/or pervasive.

59.     Claimant 3 was forced to quit in late 2018 because he could no longer tolerate the ongoing sexually abusive hostile work environment.

<u>Claimant 4</u>

60.     Claimant 4, a twenty-one-year-old male Cook, was employed at Defendants' McDonald's store in Blythe, California, from January 2016 to early January 2021.

61.     During his employment, Claimant 4 was subjected to unwanted physical and verbal sexual harassment by his supervisors on practically a daily basis.

62.     For example, Claimant 4's General Manager would send Claimant 4 sexually inappropriate text messages.

63.     Claimant 4 was also dating the General Manager's sister during a four-month period while he was employed at this McDonald's. During this time period, the General Manager subjected Claimant 4 to sexually offensive comments regarding Claimant 4's penis in front of co-workers. For example, the General Manager would openly comment about Claimant 4's penis size for everyone at the store to hear. The General Manager openly told co-workers that his sister had told him that Claimant 4 had a big penis, and that his sister should share Claimant 4's penis with him. Claimant 4 found this conduct unwelcome.

64.     On another occasion, another manager smacked Claimant 4's crotch area. Claimant 4 immediately complained

65.     The General Manager was also the hiring manager at this McDonald's store. According to Claimant 4, the General Manager would message young male applicants on Facebook with sexually inappropriate comments and conditioned them being hired at McDonald's on whether they acquiesced to his sexual demands.

66.     The harassment Claimant 4 was subjected to was unwelcome and made her uncomfortable.

67.     The harassment Claimant 4 was subjected to was severe and/or pervasive.

68.     The sexual harassment culminated in a tangible employment action when Claimant 4 was forced to quit and constructively discharged in early 2021 because he could no longer tolerate the ongoing sexually abusive hostile work environment.

Claimant 5

69.     Claimant 5, a twenty-six-year-old female Shift Manager at Defendants' McDonald's store in Blythe, California, was employed from May 2017 to mid-December 2020.

70.   Claimant 5 was supervised by the same General Manager that was sexually harassing Claimant 4.

71.   During the course of her employment, Claimant 5 worked closely with the General Manager and was forced to endure constant sexual harassment by the General Manager.

72.   The General Manager engaged in a hiring practice through 2020 that Claimant 5 found sexually hostile and offensive. The General Manager was in charge of receiving and reviewing job applications, interviewing applicants, and making hiring decisions. The General Manager was particularly fond of the young male applicants. After conducting interviews, The General Manager would message young male applicants via Facebook and send them sexually inappropriate messages and requests for dates. The General Manager admitted to Claimant 5 that he informed these male applicants via Facebook that if they refused to sexually engage with him and/or date him, he would not hire them.

73.   In Claimant 5's presence, the General Manager would constantly make sexually offensive comments about co-workers' body parts and physical appearance.

74.   During 2017 to mid-2019, many employees complained to Claimant 5 about the General Manager's sexual comments and conduct. Claimant 5 would relay these employee complaints to upper management, but Defendants did nothing to stop the harassment.

75.   In July 2019, Claimant 5 felt compelled to compile a list of all the sexual harassment complaints that she had received. Claimant 5 submitted the list of complaints to upper management with a request for an investigation and remedial action. Later in July 2019, an employee meeting was held at the store where Defendants required employees were required to sign an agreement regarding sexual harassment. However, no other remedial action was taken.

76.   After the July 2019 employee meeting, Claimant 5 continued to

receive complaints from employees about being subjected to sexually offensive comments by male managers and co-workers. These comments often related to co-workers' body parts such as breast size.

77.     Sometime during early December 2020, Claimant 5 saw the General Manager subject an eighteen-year-old female crew member to sexually offensive physical conduct. More specifically, as this female crew member was working the drive-thru, the General Manager walked up to her and flipped her breasts like a pancake with white order dividers (long white sticks), and then giggled in amusement. The female crew member yelled at the General Manager to stop and was deeply offended.

78.     By mid-December 2020, Defendants acknowledged that they had a "sexual harassment problem" at this store. However, management at the store never received support or guidance from the corporate/main office in Kingman, Arizona to remedy and stop the harassment.

79.     The harassment Claimant 5 was subjected to was unwelcome and made her uncomfortable.

80.     The harassment Claimant 5 was subjected to was severe and/or pervasive.

81.     The sexual harassment culminated in a tangible employment action when Claimant 5 was forced to quit and constructively discharged in mid-December 2020 because she could no longer tolerate the ongoing sexually abusive hostile work environment.

Claimant 6

82.     Claimant 6, a nineteen-year-old female Crew Member, was employed at Defendants' McDonald's store in Kingman, Arizona from June 2016 to January 2020.

83.     During her employment, Claimant 6 was subjected to unwanted physical and verbal sexual harassment by her supervisors.

84.     Sometime in July 2017, a manager told Claimant 6 that she "needed to wear lacy bras from Victoria Secrets because she didn't want to step on [Claimant 6's] boobs when she woke up." Claimant 6 was deeply offended and immediately complained to the general manager that day. The general manager denied that the incident ever happened and did not believe Claimant 6's allegations.

85.     Claimant 6 also placed a call to the corporate/main office to complain about the July 2017 incident and was told the incident would be handled. However, Claimant 6 never heard back from Defendants or anyone from management regarding her complaint.

86.     Sometime in February 2019, Claimant 6 was subjected to sexually lewd conduct by a male general manager. As Claimant 6 was bending down to pick up trays from the floor, the manager suddenly walked in front of her and placed his crotch area a few inches from Claimant 6's face and told her to "get me drunk first." Claimant 6 believed that the manager was asking her to simulate performing oral sex on him. Claimant 6 was visibly shaken and cried after the incident.

87.     Claimant 6 immediately called the corporate/main office to complain about the crotch incident with the manager but was again told by the person who answered the call that "we will handle it." However, Claimant 6 never received a response to her complaint from Defendants.

88.     The harassment Claimant 6 was subjected to was unwelcome and made her uncomfortable.

89.     The harassment Claimant 6 was subjected to was severe and/or pervasive.

90.     The sexual harassment culminated in a tangible employment action when Claimant 6 was forced to quit and constructively discharged in January 2020 because she could no longer tolerate the ongoing sexually abusive hostile work environment.

<u>Claimant 7</u>

91.     Claimant 7, a twenty-five-year-old female Crew Member, was employed at Defendants' McDonald's store in Kingman, Arizona from May 2020 to August 2020.

92.     During her employment, Claimant 7 was subjected to unwanted physical and verbal sexual harassment by her supervisor.

93.     Sometime during late June 2020, a male shift manager started caressing/rubbing Claimant 7's back and bra in a sexual nature. After Claimant 7 told the manage to stop, he asked her, "why, don't you like it?" The manager then chuckled and continued rubbing her back and bra area.

94.     Claimant 7 immediately complained to another general manager about being sexually harassed and was told that she, the general manager, would handle the issue. However, the general manager did nothing to address Claimant 7's complaint. Claimant 7 was upset and confronted the general manager about not responding to her complaint. Claimant 7 told the general manager in the presence of other co-workers that she planned to quit and complain to someone who actually cares about "underage" girls being sexually harassed at McDonald's.

95.     Later that day, the male shift manager again grabbed Claimant 7's shoulders and tried to grab her hips. After she told the male manager to stop, he accused a fellow crew member of wanting to have sex with Claimant 7 and commented that Claimant 7 had a "good set of tushies." After Claimant 7 complained about this incident, she was reassigned to cashier duties to be away from the male manager.

96.     Sometime during the summer of 2020, another fellow male crew member began walking behind Claimant 7 and made humping motions toward her rear end. The male crew member also made these humping motions to another sixteen year old female crew member which caused other employees to laugh.

97.     During the summer of 2020, Claimant 7 ran into three (3) separate

instances where employees were half-naked and "making out with each other" in the McDonald's store. One of the female crew members who was engaged in a "make out session" with a male swing/shift manager was approximately fifteen years old. Claimant 7 later complained to the general manager about having to endure employees engaging in "make out sessions" in the store, but nothing was done.

98.   Sometime during August 2020, Claimant 7 complained to the general manager that another male shift/swing manager was spreading rumors at the store regarding her sex life. One day after her complaint, Claimant 7 was fired.

99.   The harassment Claimant 7 was subjected to was unwelcome and made her uncomfortable.

100.   The harassment Claimant 7 was subjected to was severe and/or pervasive.

101.   The sexual harassment culminated in a tangible employment action when Claimant 7 was discharged in August 2020.

Claimant 8

102.   Claimant 8, a twenty-seven-year-old female Crew Member, was employed at Defendants' McDonald's store in Bullhead City, Arizona from September 2018 to November 2018. The sexual harassment included but was not limited to the following.

103.   During her employment, Claimant 8 was subjected to unwanted physical and verbal sexual harassment by her supervisors.

104.   As soon as Claimant 8 began her employment, a male manager began making sexually inappropriate comments on a daily basis, like telling her that she was "hot." Sometime during employment, the male manager asked Claimant 8 out for a date, but she declined.

105.   Immediately thereafter, the male manager cut Claimant 8's weekly work hours from forty (40) to just five (5). Claimant 8 did not complain because

she was a single mother and did not want to lose her job.

106.   The harassment Claimant 8 was subjected to was unwelcome and made her uncomfortable.

107.   The harassment Claimant 8 was subjected to was severe and/or pervasive.

108.   The sexual harassment culminated in a tangible employment action when Claimant 8 was subjected to a substantial reduction in work hours and constructively discharged in November 2018.

Claimant 9

109.   Claimant 9, a nineteen-year-old female crew member, was employed at Defendants' McDonald's store in Laughlin, Nevada from April 2020 to early 2021.

110.   During her employment, Claimant 9 was subjected to unwanted physical and verbal sexual harassment.

111.   On at least six different occasions, a male co-worker would walk behind Claimant 9 as she was clocking into work and grab and/or grope her waist and "private parts."

112.   Claimant 9 complained to management on at least three different occasions, but nothing was done to stop the harassment.

113.   The harassment Claimant 9 was subjected to was unwelcome and made her uncomfortable.

114.   The harassment Claimant 9 was subjected to was severe and/or pervasive.

115.   Claimant 9 was forced to quit in January 2021 because she could no longer tolerate the ongoing sexually abusive hostile work environment and was afraid the harassment would escalate into something really bad if she continued working at McDonald's.

1

Claimant 10

2       116.    Claimant 10, a nineteen-year-old female crew member and shift

3 manager, was employed at Defendants' McDonald's store in Kingman, Arizona

4 from August 2017 to late March 2020.

5       117.    During her employment, Claimant 9 was subjected to unwanted

6 physical and verbal sexual harassment.

7       118.    On the evening of March 11, 2020, Claimant 10 and two male co-

8 workers were cleaning the store in preparation for a "cleanliness" inspection by

9 upper management. Claimant 10 and a male crew member walked to the storage

10 room together to grab some items. When they were alone in the storage room, the

11 male crew member suddenly reached out and groped Claimant 10's genital area.

12 The male crew member stopped when Claimant 10 yelled at him to stop

13      119.    Later that night, the same male crew member shoved Claimant 10

14 against the counter and groped her again. Claimant 10 again yelled at him to stop

15      120.    On the next day, another female crew member reported the sexual

16 harassment incident because Claimant 10 was too distraught. Two days later,

17 management held an employee meeting to announce to everyone that the security

18 cameras did not tape the incident. Defendants did not engage in any remedial

19 action. As a result, Claimant 10 felt despondent.

20      121.    A few days later, Defendants denied Claimant B's request for leave to

21 take care of an ill friend.

22      122.    Shortly thereafter and without any prior warning, Defendants

23 suspended Claimant 10 for a week starting March 25, 2020.

24      123.    The harassment Claimant 10 was subjected to was unwelcome and

25 made her uncomfortable.

26      124.    The harassment Claimant 10 was subjected to was severe and/or

27 pervasive.

28

125.    Claimant 10 was forced to quit and constructively discharged in late March 2020 because she could no longer tolerate the ongoing sexually abusive hostile work environment and was afraid the harassment would escalate into being raped if she continued working at McDonald's.

126.    Since at least 2017 through the present, other adversely affected aggrieved individuals were subjected to a sexually hostile work environment and *quid pro quo* sexual harassment by managers and co-workers at Defendants' McDonald's stores within the tri-state region. The sexual harassment included but was not limited to a) unwanted touching, groping, and grabbing of hips, neck, shoulders, and rear end, b) sexual advances; c) leering, and d) sexually offensive comments about body parts.

127.    The sexual harassment was sufficiently severe or pervasive to as alter the Charging Party's and the Claimants' working conditions and created sexually a hostile work environment.

128.    The Charging Party and the Claimants reasonably perceived their work environment to be sexually abusive or hostile work environment, to the extent Charging Party and many of the Claimants were forced to quit.

129.    The Charging Party and the Claimants did not welcome the sexual harassment by the managers, supervisors, and co-workers. They opposed and rejected the sexually harassing conduct and sexual advances.

130.    Defendants knew or should have known of the sexual harassment experienced by the Charging Party and the Claimants because the sexual harassment was constant, conspicuous, and perpetrated by managers, supervisors, and co-workers.

131.    Defendants failed to take prompt and effective remedial action reasonably calculated to end the harassment, including but not limited to failing to a) either investigate or conduct an adequate investigation, b) discipline the alleged harasser(s), c) provide anti-sexual harassment training to managers, supervisors,

and co-workers, and d) provide written EEO policies and procedures in both English and Spanish.

132.   Defendants failed to end the harassment after the Charging Party complained in 2017.

133.   Defendants never disciplined any other alleged harasser(s) for engaging in sexual harassment.

134.   The effect of the practices complained of above, has been to deprive Charging Party and the Claimants of equal employment opportunities and otherwise adversely affect their status as an employee, because of sex.

135.   The unlawful employment practices complained of above were intentional and caused the Charging Party and the Claimants to suffer emotional distress.

136.   The unlawful employment practices complained of above, were done with malice or with reckless indifference to the federally protected rights of Charging Party and the Claimants.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.   Grant a permanent injunction enjoining Defendants, their officers, successors, agents, servants, employees, attorneys, assigns, and all persons in active concert or participation with each of them, from engaging in sexual harassment and any other employment practices which discriminate based on sex.

B.   Order Defendants to institute and carry out policies, practices, and programs to ensure equal employment opportunities, and which eradicate the effects of past and present unlawful employment practices.

C.   Order Defendants to make whole Charging Party and other adversely affected individuals by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to

eradicate the effects of their unlawful employment practices, including but not limited to back pay.

D.     Order Defendants to make Charging Party, and other adversely affected individuals whole by providing compensation for past and future pecuniary losses, including but not limited to out-of-pocket expenses suffered by Charging Party and other adversely affected individuals which resulted from the unlawful employment practices described above in the amounts to be determined at trial.

E.     Order Defendants to make Charging Party, and other adversely affected individuals whole by providing compensation for non-pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial. The non-pecuniary losses include emotional pain, suffering, inconvenience, mental anguish, humiliation and loss of enjoyment of life, in amounts to be determined at trial.

F.     Order Defendants to pay Charging Party, and other adversely affected individuals punitive damages for malicious and/or reckless conduct in an amount to be determined at trial.

G.     Award the Commission its costs of this action.

H.     Grant such further relief as the Court deems necessary and proper in the public interest.

///
///
///
///
///
///

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: September 29, 2021                    Respectfully Submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel
Washington, DC

LISA MORELLI
Acting Associate General Counsel
Washington, DC

By:    _____
ANNA Y. PARK
Regional Attorney
EEOC – Los Angeles District Office

NAKKISA AKHAVAN
Supervisory Trial Attorney

CONNIE K. LIEM
Senior Trial Attorney

ATTORNEYS FOR PLAINTIFF
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION